IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2019

**ARNOLD STEVENS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Wayne County
Nos. 15920, 15594, 15595, 15716  Russell Parkes, Judge**

———————————————————

**No. M2018-00530-CCA-R3-PC**

———————————————————

Petitioner, Arnold Stevens, appeals the denial of his petition for post-conviction relief. On appeal, Petitioner argues that his guilty plea was unknowing and involuntary due to the ineffective assistance of counsel.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Chelsea Nicholson (on appeal), Nashville, Tennessee; and William Joshua Morrow (at hearing), Lawrenceburg, Tennessee, for the appellant, Arnold Mark Stevens, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Beverly White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was indicted in Case Number 15594 for one count of attempted first degree murder, one count of especially aggravated kidnapping, and one count of aggravated assault.  Petitioner was also indicted in Case Number 15595 for possession of a firearm by a convicted felon.  In Case Number 15716, Petitioner waived his right to an indictment and was charged by criminal information with one count of possession of more than .5 grams of methamphetamine, a Schedule II controlled substance, with intent to sell; one count of possession of drug paraphernalia; one count of possession of Xanax,

a Schedule IV controlled substance, with intent to sell; and one count of possession of marijuana, a Schedule VI controlled substance, with intent to sell.[1]

On September 17, 2015, Petitioner entered a negotiated guilty plea resolving all of his pending charges. In Case Number 15594, the attempted first degree murder charge was dismissed, and Petitioner pled guilty to the amended charge of facilitation of especially aggravated kidnapping, a Class B felony, in exchange for a sentence of 20 years to be served at 35%.[2] Petitioner also pled guilty to aggravated assault, a Class C felony, in exchange for a concurrent sentence of 6 years to be served at 35%. In Case Number 15595, Petitioner pled guilty to possession of a firearm by a convicted felon, a Class E felony, in exchange for a sentence of 2 years to be served at 35% concurrent with his sentences in Case Number 15594. In Case Number 15716, Petitioner pled guilty to possession of a Schedule II drug with intent to sell, a Class C felony, in exchange for a sentence of 8 years; possession of a Schedule IV drug with intent to sell, a Class D felony, in exchange for a sentence of 2 years; and possession of a Schedule VI drug with intent to sell, a Class E felony, in exchange for a sentence of 1 year. These sentences were run consecutively to each other and were suspended to probation. The effective 11-year probationary sentence in Case Number 15716 was run consecutively to the effective 20-year prison sentence in Case Numbers 15594 and 15595.

At the plea hearing, the State gave the following factual summary of the charges in Case Number 15594:[3]

> [O]n or about the 6th day of October, 2014, [Petitioner], along with others, did go to Sammy Brewer's house and get him in the car with them, take him up to a hillside, which is called a hunting area. At which point, Mr. Brewer was sliced open quite deeply with a knife. It's alleged at that point, he was put into a barrel, taken to [Petitioner's] house several miles down the road.

---

[1] The criminal information for the marijuana charge appears to be missing from the exhibit entered at the post-conviction hearing and is not otherwise in the record before this Court.

[2] The Special Conditions box on the judgment form for Count 2 of Case Number 15594 and Count 1 of Case Number 15595 states, "This is a hybrid plea settlement pursuant to State v. Hicks wherein sentence and range have been specifically negotiated." *See Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997). According to the prosecutor at the plea hearing, Petitioner did not have "enough serious predicate offenses to be [R]ange II for a Class B felony" but was "a true [R]ange II on the other listed offenses."

[3] Although the prosecutor stated that this summary also applied to Case Number 15595, no mention was made of any firearm or of Petitioner's prior felony conviction.

While he was at that house, he had a toe cut off, and I think the actual person who actually did the cutting of the toe was Brittany Thompson per her statement. Ms. Thompson was also the one who had actually injected him with some drugs during that time.

He was put in this barrel and had been hit over the head while he was in that barrel. He was then taken out and later put back in it and put in a truck and taken out to a very rural area and tied to a tree. [Petitioner] and Ms. Thompson were both there at that time. When they checked, he got loose. He was retied. And at some time later, [Petitioner] got Mr. Brewer in the car, took him to an individual's house, who then took him to the emergency room.

The State also gave the following factual summary of the charges in Case Number 15716:

The Wayne County Sheriff's Department, working with a confidential informant, had a buy made of the hashish from [Petitioner]. They executed a search warrant on his residence. Upon the execution of the search warrant on July 7th, 2015, they found him in possession of the schedule VI for resell [sic], the schedule IV for resell [sic], the drug paraphernalia, which, of course, in the plea agreement, it was nolle prosequi, Your Honor, the possession of the schedule II for resell [sic], also found several guns, which were nolle prosequi at the general sessions level. And I think there was another drug that was found that was nolle prosequi at that level also.

Before accepting Petitioner's guilty plea, the trial court acknowledged that he had "represented [Petitioner] in a completely unrelated matter years ago" but that it did not "r[i]se to the level of recusal," and the parties consented to the trial court presiding over the case and accepting the plea. The trial court asked whether Petitioner "had an adequate opportunity to discuss the indictments, the allegations made against you in the indictments in all of these cases[,]" and the range of punishment for each charge with counsel, to which Petitioner responded affirmatively. Petitioner denied that his plea was the result of any threats or promises outside the terms of the plea agreement, and he denied that he was under the influence of any drugs or alcohol. The trial court discussed the constitutional rights that Petitioner was waiving by pleading guilty and ensured that he understood them. The trial court ensured that Petitioner understood that he was waiving his rights to a preliminary hearing in general sessions court, to an indictment by the grand jury, and to the rules of discovery on the charges contained in the criminal information. The trial court asked if Petitioner understood that he was foregoing his "absolute right" to appeal "any error that I may have made," to which Petitioner

- 3 -

responded affirmatively.  The trial court explained that Petitioner was receiving an out-of-range sentence for the facilitation of especially aggravated kidnapping charge.  Petitioner expressed some confusion over the sentence length and alignment he was receiving – whether the 20-year prison sentence was composed of concurrent or consecutive sentences – and how that would affect his parole eligibility.  The trial court explained that Petitioner was getting a "20-year package" in Case Numbers 15594 and 15595 and that his parole eligibility would be determined by the Board of Probation and Parole.  The trial court also explained that the 11-year probationary sentence in Case Number 15716 was required to be served consecutively to Petitioner's sentence in his other cases because he was on bond at the time he committed the drug offenses.  The trial court ultimately accepted Petitioner's plea as well as "the State's agreement that there will be no other charges relative to any criminal activity for which [Petitioner] ha[d] been identified as a defendant or a suspect," that "[t]here will be no federal gun charges," and that Petitioner's truck would be released to his daughter's possession after 45 days.

On September 23, 2016, Petitioner filed a pro se petition for post-conviction relief alleging that his guilty plea was not knowing and voluntary and that he received ineffective assistance of counsel.  The post-conviction court found that the petition stated a colorable claim and appointed counsel.  Although the record before this Court contains a motion filed by post-conviction counsel requesting additional time to file an amended petition, which was granted by the post-conviction court, the record does not contain either an amended petition or a written notice that no amended petition would be filed.  *See* Tenn. Sup. Ct. R. 28, § 6(C)(2).  On January 11, 2018, the post-conviction court held a hearing at which Petitioner and trial counsel testified.

Petitioner testified that he retained trial counsel to represent him in the kidnapping case beginning in general sessions court.  The charges were bound over to the grand jury after a preliminary hearing.  Trial counsel was able to negotiate a bond, and Petitioner was out on bond until he was arrested on the drug charges.  Petitioner testified that his eventual guilty plea was not knowing and voluntary because trial counsel "gave up on the case" after the trial court denied the motion to suppress.  Petitioner stated that "the last two weeks before trial . . . everything changed," including trial counsel's "theory of the case and how we should go about it."

Petitioner testified that he "intended" to take his case to trial.  Trial counsel did not discuss any plea offers with Petitioner "until late into the deal," around August 2015.  Petitioner recalled an initial plea offer of 24 years.  Petitioner met with trial counsel "a few times" while he was out on bond, and trial counsel "[s]omewhat" discussed the strengths and weaknesses of Petitioner's case.  Trial counsel filed several motions on Petitioner's behalf related to "illegal search and planting evidence."  However, "[i]t didn't go too good" because "[s]everal motions we thought should have been granted were not granted[.]"  Petitioner asked trial counsel if they could appeal, but trial counsel

- 4 -

told him "when a [j]udge makes a ruling, a ruling's a ruling." After motion day, "[t]hings just went bad," and trial counsel wanted Petitioner to accept a plea. Petitioner had "assumed" that the State would take his case to trial regardless of how the judge ruled on the motions, but trial counsel appeared to change his mind on whether Petitioner should plead guilty after the motions hearing.

Petitioner eventually pled guilty within a week of the motions hearing. Petitioner explained why he changed his mind about pleading guilty:

> I guess, like I said, everything being so close together kind of works on you mentally. [Trial counsel] told my daughter if I didn't take this plea I'd probably not talk to her again besides through glass or bars. It was upsetting to her and just a mental strain.

Petitioner agreed that trial counsel explained to him that he was facing 25-year sentences to be served at 100% if he were convicted of attempted first degree murder and especially aggravated kidnapping, both Class A felonies. When Petitioner spoke to his daughter, "[s]he told me I needed to take this plea and that if I didn't take this plea that [trial counsel] said I would never see her or my grandkids again except for behind bars." According to Petitioner, trial counsel told him he needed to accept the 20-year plea offer, and he "finally said okay." Petitioner's trial was scheduled to begin the following Monday, and Petitioner understood that he could proceed to trial, but trial counsel "kindly scared me not to."

According to Petitioner, trial counsel told Petitioner that he could not appeal the trial court's ruling on the motion to suppress. Petitioner did not understand why trial counsel did not call him to testify at the suppression hearing about whether his daughter could give the police permission to enter his house without a search warrant. Petitioner agreed that he did not tell trial counsel that he wanted to testify. Petitioner also believed that police officers perjured themselves and planted evidence.

Petitioner knew that even if the trial court had suppressed the evidence that police found during the contested search, the State still had other evidence against him, including the testimony of his two codefendants and the victim, Mr. Brewer. Petitioner knew that trial counsel had obtained favorable statements from the victim. Petitioner initially believed that the victim would testify for the defense "[b]ecause I saved his life. He wouldn't be here today if it wasn't for me, and that's what he said in his testimony." Petitioner made the decision to plead guilty when trial counsel told him that the victim was actually going to testify for the prosecution.

Petitioner testified that even though he told the trial court he was entering his plea knowingly and voluntarily, he was actually doing so "under distress." According to Petitioner,

> I didn't want to plead guilty, but I felt like I had no choice under the circumstances of what [trial counsel] was telling me. . . . [H]e was just telling me it wasn't looking good. You know, if it was him, he would take that plea and wouldn't gamble.

Petitioner testified that he was "scared of what would happen" if he did not take the plea and proceeded to trial. Petitioner explained how the denial of his motion to suppress affected his decision to plead guilty:

> [W]henever you're denied this motion, whenever you think you got a solid legal standing with that motion and you get mowed down, it works on you mentally on how to make decisions. And when things are that close to trial and everything, you ain't got time to think things through. You get into a panic, and you do things you normally wouldn't.

Petitioner did not know if he ever told trial counsel that he needed more time to think about his decision.

On cross-examination, Petitioner agreed that he met with trial counsel several times and that trial counsel wrote him a letter explaining his sentencing exposure on the indicted offenses of attempted first degree murder, especially aggravated kidnapping, and aggravated assault. Petitioner agreed that he rejected the State's initial offer of 12 years at 30% for facilitation of especially aggravated kidnapping consecutive to an effective sentence of 12 years at 35% for aggravated assault and felon in possession of a handgun. Petitioner also rejected the State's offer that he "plea open" to aggravated assault, felon in possession of a handgun, and the reduced charge of facilitation of especially aggravated kidnapping without an agreement as to the sentence. According to the letter, trial counsel believed that having a sentencing hearing was the "best option" because the trial judge could take into account the victim's testimony. Trial counsel also expressed his opinion that a jury was likely to convict Petitioner of especially aggravated kidnapping, aggravated assault, and felon in possession of a handgun and that "the attempted first-degree murder charge could go either way." Trial counsel's letter stated that Petitioner's case was "very serious . . . and that we were potentially fighting for the last years of your life and how you will spend them." The letter was dated August 21, 2015, prior to the motions hearing on September 14.

With regard to the motion to suppress, Petitioner testified that he believed an officer "planted evidence in the search warrant . . . that he didn't find," including "a knife

- 6 -

and a WD-40 can." According to Petitioner, "it just shows that they was [sic] out to get me at any cost." Petitioner agreed that trial counsel told him that the case would go to trial regardless of whether they won or lost the motion to suppress. Petitioner testified that he did not have a chance to tell trial counsel that he wanted to testify at the suppression hearing because he was sitting across the room in handcuffs rather than at counsel table. Petitioner did not realize that if he had testified at the suppression hearing, the State could have asked him "all sorts of questions about everything that had gone on that day."

The State entered the transcripts of the suppression hearing and the plea hearing into evidence. Petitioner agreed that the transcript of the plea hearing accurately reflected his answers to the trial court regarding his understanding of his plea agreement and the rights he was waiving.

On redirect examination, Petitioner testified that "everything was running downhill" after the trial court denied his motion to suppress, and trial counsel's focus shifted to taking a plea rather than going to trial. Even though Petitioner "told [trial counsel] I didn't want to plea from the start," Petitioner testified that trial counsel's sudden change of opinion "was heavy weighing on me." Petitioner did not understand what had happened to change trial counsel's mind, other than the fact that Petitioner was arrested while out on bond. Petitioner admitted that trial counsel filed all of the motions on Petitioner's behalf that Petitioner wanted. Petitioner admitted that he was more dissatisfied with the trial court's ruling on the suppression motion than with trial counsel's performance. Petitioner wanted to appeal the ruling, but trial counsel said that he could not. Petitioner did not understand what the trial court was referring to during the plea colloquy when he said that Petitioner was waiving his right to appeal by pleading guilty because he did not belive he could appeal.

Trial counsel testified that he represented Petitioner "on all the charges regarding Mr. Sammy Brewer." Trial counsel testified that Petitioner would only accept a plea agreement if it also resolved his pending drug charges, so trial counsel acted as a "facilitator" to have those charges brought up on a criminal information and included in the plea deal even though he had not seen any discovery yet. Trial counsel spoke to the prosecutors and secured an agreement that they would not file any additional charges and "that there would be no phone call to the feds for the federal gun charge."

Trial counsel testified that when he initially met with Petitioner in regards to the Class A felonies, trial counsel stated "we are fighting for the last 10, 15, 20 years of your life at this point. Because if you are convicted of these at 100 percent, you're gonna be in jail until you really don't have any quality of life left when you get out." Trial counsel negotiated a lower bond for Petitioner in general sessions court. However, trial counsel advised Petitioner not to make the bond because "I knew they were gonna try to get him

on something else, which, in fact, they did while he was out on bond." Trial counsel and Petitioner stayed in contact and met several times while Petitioner was out on bond. Trial counsel also "did the work" of filing motions and keeping Petitioner "in the loop on everything." After trial counsel received discovery, he paid another attorney out-of-pocket to assist him on the case.

Trial counsel recalled that the victim did not testify at the preliminary hearing. Trial counsel was able to locate the victim and record a statement from him. The victim had been recently released from the hospital but told trial counsel that he was not on medication at the time. The victim said that Petitioner "never laid a hand on me." Trial counsel testified that "it was a pretty good statement from the victim." Trial counsel testified that he was "trying to play strategy" with that statement to secure a better deal. However, "things really started closing in" when Petitioner's codefendants "cut a deal with the State." When trial counsel spoke to the victim again, the victim said that he had been on pain medication at the time of the first statement and "started telling me some things that were detrimental."

Trial counsel agreed that Petitioner did want to go to trial. During one meeting, Petitioner told trial counsel that he "needed to get [his] big girl panties on and get ready for trial." Although trial counsel was preparing for trial, he testified that it was his "obligation to give [Petitioner] my advice" about the likelihood of success as all the new information and evidence "started coming in." Trial counsel understood that Petitioner "was under a lot of pressure." Trial counsel and co-counsel both tried to explain to Petitioner his sentencing exposure and the State's case against him. Trial counsel testified that Petitioner was "more intelligent than a lot of people we deal with, so he was asking a lot of questions all along about this stuff." Trial counsel advised Petitioner to take the plea offer, believing that Petitioner would "probably do 9 or 10 years" before being released on parole.

With regard to the motion to suppress, trial counsel recalled that it "was a very hard fought one." Trial counsel testified that Petitioner was correct that they were not sitting next to each other during the hearing because trial counsel had requested to move closer to the witness stand due to his difficulty hearing. However, trial counsel did walk over to speak to Petitioner as needed throughout the hearing. Trial counsel testified that it was a strategic decision to call Petitioner's daughter to testify rather than Petitioner "because he was just gonna say things he shouldn't." Trial counsel believed that Petitioner "had a fighting chance" on the motion to suppress, but the trial court ruled against him. Trial counsel told Petitioner that he could appeal the ruling after trial if they went to trial. Trial counsel did not think the issue was proper for an interlocutory appeal, "but I told him we could."

Trial counsel testified that after losing the motion to suppress, "we really started to try to hammer out a deal." Trial counsel had other motions he intended to file, but he explained to Petitioner that the State still had a strong case against him with the witness testimony. Trial counsel had a difficult time locating witnesses, and he knew that the State had also been talking to them in preparation for trial. Trial counsel was never officially retained on the drug charges, but Petitioner insisted that he would only accept a plea if it resolved everything. Trial counsel "never stopped preparing for trial" on the kidnapping case, which was scheduled for trial the Monday after Petitioner entered his plea. Trial counsel understood that Petitioner was feeling the pressure of the impending plea deadline and all of the information coming in, but trial counsel was "not creating pressure; I'm conveying information." Trial counsel characterized Petitioner as "intelligent" and a "hard bargainer."

On cross-examination, trial counsel testified that he conveyed to the Petitioner his concerns about the victim changing his testimony. Trial counsel had initially spoken to the victim before the State had, and he attempted to use that "to my advantage to try to put doubt in their minds" without revealing what the victim had said. Trial counsel knew he could cross-examine the victim with his initial statement if he testified against the Petitioner at trial. However, the State "started cutting deals" with the codefendants because Petitioner "was the one they wanted." Trial counsel understood that Petitioner was accused of inflicting the deep cut on the victim's leg and that one of the knives seized from Petitioner's residence was the alleged weapon used. Even if the evidence seized from Petitioner's residence had been suppressed, the State still had detrimental eyewitness testimony. Trial counsel "never stopped trying to get a resolution on this case that I thought would be in [Petitioner's] best interest" but "also never stopped preparing for trial." Trial counsel believed that Petitioner knew that trial counsel was working on the case in preparation for trial.

On January 25, 2018, the post-conviction court entered an order denying the petition for post-conviction relief. As relevant to the issues raised on appeal, the post-conviction court found that Petitioner "was represented by experienced counsel" who "reasonably investigated all matters," including "speaking with and personally interviewing the victim" and filing a motion to suppress. The post-conviction court found that it was "obvious that [Petitioner] . . . had multiple conversations and meetings with [trial] counsel relative to the defense of this matter." The post-conviction court found that trial counsel engaged in extensive plea negotiations with the State, resulting in the final plea agreement being restructured to encompass the drug charges at Petitioner's request. The post-conviction court found that trial counsel "specifically explain[ed] the terms and ramifications of the plea agreement to [Petitioner]." The post-conviction court found trial counsel's testimony "to be credible in all respects" and trial counsel's performance on Petitioner's case "to be more than adequate." The post-conviction court found that "while the Petitioner is plain spoken, he is intelligent, able to comprehend the

nature of the proceedings, filter through and understand evidence that may be used against him, understand the applicable ranges of punishment, and the elements of each offense[.]" Even though Petitioner testified that he was "under a lot of pressure" due to the denial of the motion to suppress and "the changing landscape of the case," the post-conviction court concluded that "the plea entered in this matter was free, voluntary and . . . intelligently made."

On March 23, 2018, Petitioner filed in this Court a pro se motion for delayed appeal. After receiving a response from post-conviction counsel, this Court granted the motion on April 25, 2018, and waived the timeliness of Petitioner's notice of appeal. *See* Tenn. R. App. P. 4(a). This appeal is now properly before this Court.

*Analysis*

On appeal, Petitioner argues that he received ineffective assistance of counsel, resulting in a guilty plea that was not knowing and voluntary. According to Petitioner, trial counsel "pressured him into taking a plea deal rather than going to trial" after the motion to suppress was denied by the trial court. Petitioner asserts that his guilty plea was not knowing and voluntary because "he was scared and felt like he took his plea in a panic." Additionally, Petitioner claims that but for trial counsel's deficiency in telling him that he could not appeal the suppression issue, "there is a probability that the [Petitioner] would have wanted to file an interlocutory appeal as to his Motion to Suppress ruling prior to proceeding to trial." The State responds that the post-conviction court properly denied the petition for post-conviction relief because Petitioner failed to prove that trial counsel rendered deficient performance "or that any alleged deficiency affected the voluntariness of his plea." We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are

reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting

*Strickland*, 466 U.S. at 694). In the context of a guilty plea, a petitioner "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Additionally, "such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made." *Hill*, 474 U.S. at 56. To satisfy constitutional standards of due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). When evaluating the knowing and voluntary nature of a guilty plea, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). This Court may consider the following circumstantial factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from trial.

*Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993). "[A] plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats." *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). A defendant's solemn declaration in open court that his plea is knowing and voluntary creates "a formidable barrier in any subsequent collateral proceeding" because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The evidence in the record before this Court does not preponderate against the post-conviction court's finding that trial counsel's representation of Petitioner in this case was "more than adequate." Trial counsel thoroughly investigated this case, including obtaining a favorable statement from the victim, which trial counsel used strategically in his negotiations with the State and which could have been used in cross-examination at trial. Trial counsel explained to Petitioner the seriousness of the charges he was facing and his sentencing exposure. Trial counsel filed a motion to suppress evidence obtained during a search of Petitioner's residence, in which he believed Petitioner had a "fighting chance" of success. However, trial counsel was also aware that the State had sufficient witness testimony to proceed to trial even if the challenged evidence was suppressed, and he explained that to Petitioner. Petitioner testified that he intended to take the kidnapping

- 12 -

case to trial, and trial counsel testified that he "never stopped preparing for trial." However, trial counsel was able to simultaneously negotiate a favorable plea agreement to a lesser charge that also resolved the pending drug charges, for which trial counsel had not even been retained to represent Petitioner. Petitioner failed to establish by clear and convincing evidence that trial counsel rendered deficient performance.

With regard to Petitioner's claim that trial counsel told him that he could not appeal the trial court's ruling on the motion to suppress, trial counsel testified that he did in fact tell Petitioner they could appeal it after trial but that he did not think it was proper for an interlocutory appeal. Such strategic decisions are generally entitled to great deference. Moreover, Petitioner has failed to demonstrate any prejudice resulting from this supposed deficiency. Interlocutory appeals "are generally 'disfavored,' especially in criminal cases." *Reid v. State*, 197 S.W.3d 694, 699 (Tenn. 2006) (citation omitted). Petitioner has failed to show that if trial counsel had sought an interlocutory appeal, that it would have been granted by both the trial court and this Court, *see* Tenn. R. App. P. 9, or that the outcome of such an appeal would have affected his decision to take his case to trial rather than plead guilty. *See Calvert*, 342 S.W.3d at 486. The trial court thoroughly discussed Petitioner's right to appeal at the plea hearing, and Petitioner affirmed that he understood that he was waiving this right. Because Petitioner has failed to establish by clear and convincing evidence any deficient performance or prejudice, Petitioner is not entitled to relief on the ground of ineffective assistance of counsel.

Finally, Petitioner has failed to show that his "panic" or trial counsel's "pressure" rendered his guilty plea involuntary. Although Petitioner originally intended to take the kidnapping case to trial and rejected an earlier plea offer from the State, he clearly changed his mind after trial counsel provided competent advice regarding the changing evidentiary landscape, including the victim's changing testimony, the codefendants' accepting plea deals to testify against Petitioner, and the trial court's making an adverse ruling on the motion to suppress. Trial counsel had an obligation to provide such advice regarding the likely outcome of trial and the advisability of taking the State's plea offer. Petitioner even insisted that his plea agreement include the pending drug charges on which he had not yet been indicted, showing his active role in the plea negotiation process. Petitioner stated under oath at the plea hearing that he understood the charges he was facing, the rights he was waiving, and that he was entering his plea freely and voluntarily. Petitioner even took the time to clarify how his sentence alignment would affect his parole eligibility, showing that he was not just mindlessly saying "yes" to every question asked by the trial court. We agree with the post-conviction court that despite the pressure he may have been feeling, Petitioner was "able to comprehend the nature of the proceedings, filter through and understand evidence that may be used against him, understand the applicable ranges of punishment, and the elements of each offense" and that "the plea entered in this matter was free, voluntary and . . . intelligently made."

- 13 -

Petitioner is not entitled to relief on the ground of an unknowing and involuntary guilty plea.

*Conclusion*

Petitioner failed to establish by clear and convincing evidence either that he received ineffective assistance of counsel or that his guilty plea was not knowing and voluntary. Therefore, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE